CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE, VA
FILED

JUL 2 2 2008

JOHN F. CORCORAN, CLERK
BY: /s/ [Deputy Clerk]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DAVID E. CALKINS,<br>       *Plaintiff,*<br><br>v.<br><br>PACEL CORPORATION,<br>       *Defendant.*<br><br>PACEL CORPORATION,<br>     *Counterclaim Plaintiff,*<br><br>v.<br><br>DAVID E. CALKINS,<br>F. KAY CALKINS, AND<br>DUCHESSE FARMS, LLC,<br>     *Counterclaim Defendants.* | Case No. 3:07CV00025<br><br><br><br>MEMORANDUM OPINION<br><br><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on a Motion to Reconsider Default Judgment (docket #87) filed by Counterclaim Defendants F. Kay Calkins ("Calkins") and Duchesse Farms, LLC ("Duchesse Farms"). For the reasons that follow, I will deny the Motion to Reconsider Default Judgment in an Order accompanying this Memorandum Opinion.

## I. BACKGROUND

In March 2007, Plaintiff and Counterclaim Defendant David E. Calkins, who is a founder and former director, president, and CEO of Defendant and Counterclaim Plaintiff Pacel Corporation, filed suit against Pacel in Virginia state court to enforce the terms of a severance agreement. Pacel responded in May 2007 by removing the case to federal court and counterclaiming against David Calkins and his wife, Kay Calkins, for various business torts, including self-dealing and misappropriation of corporate funds. Pacel also counterclaimed

against Duchesse Farms, which holds title to the Calkins' horse farm and whose sole managing member is Kay Calkins, claiming that the horse farm is a repository of ill-gotten gains. Because Pacel's counterclaim seeks the imposition of a constructive trust on the Counterclaim Defendants' allegedly ill-gotten assets, Pacel then filed a memorandum of lis pendens against the real property that comprises the horse farm.

In July, the parties agreed to and filed a Joint Rule 26(f) Discovery Plan, by which they set a deadline of September 3, 2007 for making Rule 26(a)(1) initial disclosures and consented to the other discovery deadlines set by the Court. In August, Duchesse Farms filed a motion to quash the memorandum of lis pendens and a motion for summary judgment. On September 4th, Pacel responded to the motions on their merits but also made a motion under Rule 56(f) to be allowed to conduct discovery in order to respond more fully to the motion for summary judgment. In this same motion, Pacel indicated that the Counterclaim Defendants' initial disclosures were past due. On September 27th, I granted Pacel's Rule 56(f) motion and ordered that "[a]ny disclosures by either party that are currently past due . . . shall be made forthwith."

On September 24th, Duchesse Farms filed a motion to have its motion to quash lis pendens heard by the magistrate judge. In its October 9th response in opposition, Pacel again complained of the Counterclaim Defendants' failure to comply with their discovery obligations, including Calkins' and Duchesse Farms' continuing failure to make their initial disclosures despite being more than 30 days past due. On October 24th, I denied the motion for a hearing before the magistrate judge and stated that I was "prepared to consider Rule 37 motions, including motions for sanctions, against any party that fails adequately to make a mandatory disclosure or respond to a request for discovery."

On October 31st, Pacel filed such a Rule 37 motion based on the Counterclaim Defendants' failure to timely provide both their Rule 26(a) initial disclosures and their responses to Pacel's Rule 33 and Rule 34 discovery requests. It asked that I enter an order compelling all of the Counterclaim Defendants to provide the overdue discovery immediately. Pacel also requested its attorney's fees and expenses incurred in making the motion. In addition, Pacel asked that I sanction Calkins and Duchesse Farms by rendering default judgments against them. Calkins and Duchesse Farms did not file responses to the Rule 37 motion.

Pacel's motion was scheduled to be heard on December 14th, along with Duchesse Farms' motions to quash and for summary judgment. The day before the hearing, and two months after they were due, Calkins and Duchesse Farms responded to Pacel's Rule 33 and 34 requests for written discovery. Their responses were by no means adequate, however, and they still had not provided their Rule 26(a) initial disclosures.

On December 21, 2007, I denied Pacel's Rule 37 motion to the extent that it sought default judgment, but did so with leave to renew should Calkins and Duchesse Farms again fail to comply with their discovery obligations. I then granted Pacel's request that I compel the Counterclaim Defendants to provide discovery, ordering them "to provide Pacel Corporation with any and all past-due discovery materials, including Rule 26(a) disclosures, answers to Rule 33 interrogatories, and responses to Rule 34 requests, on or before January 11, 2008."[1]

On January 11th, the final day for compliance, the Counterclaim Defendants all filed notices that they had served supplemental responses to Pacel's Rule 33 and Rule 34 discovery

---

[1] In addition, I denied Duchesse Farms' motions and granted Pacel's request for its attorney's fees and expenses. I later asked United States Magistrate Judge B. Waugh Crigler to determine the amount and the apportionment of fees and expenses amongst the Counterclaim Defendants and their attorneys. On March 25th, Magistrate Judge Crigler ordered that Pacel shall recover from the Counterclaim Defendants its reasonable attorney's fees and expenses in the amount of $18,850, withholding determination of the apportionment until after the merits of the case have been decided.

- 3 -

requests. On February 11th, Pacel filed a Renewed Motion for Default Judgment, alleging that Calkins and Duchesse Farms had still not fully complied with their discovery obligations and were therefore in violation of the December order. On February 29th, Pacel filed a notice that the 14 days allowed under the Court's Pretrial Order for filing any opposition to a motion had passed, that Pacel's motion was therefore properly viewed as unopposed, and that the motion was ripe for decision. Calkins and Duchesse Farms then belatedly filed an "Objection" to the motion on March 4th. At no time did either party request a hearing on the motion.

On June 4, 2008, I issued a Memorandum Opinion holding that Calkins and Duchesse Farms had failed to comply with the December 21, 2007 order compelling discovery, and that the relevant factors weighed heavily in favor of sanctioning their misconduct by rendering default judgments against them. Pursuant to Rule 37(b)(2)(A)(vi), I therefore entered an Order granting Pacel's Renewed Motion for Default Judgment. However, because the liability of the non-defaulting counterclaim defendant, David Calkins, had not yet been determined, I did not proceed to a final judgment against Kay Calkins and Duchesse Farms under Rule 54(b). Instead, I rendered default judgment against Calkins and Duchesse Farms only as to their liability, holding in abeyance the determination of damages and the entry of final judgment until David Calkins' liability has been determined.

Calkins and Duchesse Farms filed their Motion to Reconsider Default Judgment on June 16, 2008. I dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

## II. DISCUSSION

As a preliminary matter, there seems to be some confusion amongst the parties as to the effect of my June 4, 2008 Order Pacel's Renewed Motion for Default Judgment. Under Rule

- 4 -

54(b), unless "the court expressly determines that there is no just reason for delay.... any order ... that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" is not a final judgment. In the Order, I clearly stated that I was rendering default judgment as to liability alone, and I did not "expressly determine[] that there is no just reason for delay." Accordingly, the June 4th Order is interlocutory and therefore cannot immediately be appealed. *U.S. ex rel. Hudson v. Peerless Ins. Co.*, 374 F.2d 942, 944–45 (4th Cir. 1967). Also, for the same reason, the Motion for Reconsideration is not subject to the requirements of Rule 60(b); rather "interlocutory judgments . . . are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." Fed. R. Civ. P. 60 advisory committee notes.

In addition, "where liability is joint and several, the entry of default judgment against fewer than all defendants in an action is proper, [but] a damages hearing may not be held until the liability of each defendant has been resolved." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1324 (7th Cir. 1983); *see also Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.*, 978 F.2d 430, 433 (8th Cir. 1992) ("When there are multiple defendants who may be jointly and severally liable for damages alleged by plaintiff, and some but less than all of those defendants default, the better practice is for the district court to stay its determination of damages against the defaulters until plaintiff's claim against the nondefaulters is resolved."). Thus, the practical effect of the June 4th Order rendering default judgment as to Calkins' and Duchesse Farms' liability is that they "may not participate in the merits aspect of the trial, as their default judgments stand as admissions of liability." *Montcalm Publ'g. Corp. v. Ryan*, 807 F. Supp. 975, 978 (S.D.N.Y. 1992); *see also Peerless Ins. Co.*, 374 F.2d at 944 (stating that a defaulting defendant has "lost its standing in court and cannot participate in any

subsequent trial of the claims against the [non-defaulting defendant]"); *Phoenix Renovation Corp. v. Gulf Coast Software, Inc.*, 197 F.R.D. 580, 584 (E.D. Va. 2000) ("[T]he defaulting defendant may not contest any of the findings of fact or conclusions of law set forth in the magistrate's Report. . . . However, we will hold in abeyance the actual entry of a final default judgment . . . pending conclusion of this action with respect to [the non-defaulting] defendant.")

"[A] default does not concede the amount [of damages] demanded," and Calkins and Duchesse Farms are therefore entitled to participate in a damages hearing, should such a hearing be required. 10A Charles Alan Wright et al., *Federal Practice and Procedure: Civil* § 2688 (3d ed. 1998) (citations omitted). Nevertheless, their ability to offer evidence at such a hearing may well be extremely limited, given their failures to satisfy their discovery obligations. *See, e.g.*, Fed. R. Civ. P. 37 (c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . at a hearing . . . unless the failure was substantially justified or is harmless.").[2]

Turning, then, to the merits of the Motion to Reconsider, Calkins and Duchesse Farms offer three reasons why their failures to comply with their discovery obligations and this Court's orders should be excused and the default judgment set aside: (1) "they were overwhelmed by the magnitude of the discovery effort," (2) "they were financially strapped," and (3) "there was a serious illness of Kay Calkins." (Countercl. Defs.' Mot. Recons. 2.) They argue that these circumstances show "that they were at worst guilty of excusable neglect and inadvertence." (*Id.*)

---

[2] Since the entry of default judgment, Calkins and Duchesse Farms have shown a sudden interest in actively participating in the discovery process (though they apparently have still failed to provide their Rule 26(a) disclosures or supplement their inadequate discovery responses). Both they and Pacel complain in their briefs of a variety of failures to cooperate in discovery, but I decline to address the parties' complaints, as they are not properly before the Court on the Motion to Reconsider. Calkins and Duchesse Farms have also recently filed a motion for a protective order. However, the effect, if any, of the default judgment on their obligation to provide discovery or their ability to seek discovery is an issue I will leave to the discretion of Magistrate Judge Crigler.

Assuming without deciding that their assertions are true, they show neither excusable neglect nor inadvertence, and they fail provide a sufficient basis for setting aside the default judgment. Certainly, Kay Calkins' illness is unfortunate, and any of the proffered justifications would probably have been sufficient grounds for granting her and Duchesse Farms additional time to provide their discovery responses, had such a request been made many months ago. The problem now is that this is the first the Court has heard of these issues, and I discern no reasonable explanation why they could not and should not have been presented in a much more timely fashion. Excusable neglect might justify, for example, filing a motion for an extension of time to provide initial disclosures after *the first time* it is pointed out that the deadline has already passed, but it cannot justify *never* providing initial disclosures. Likewise, the extensive inadequacies of the discovery Calkins and Duchesse Farms did provide cannot be chalked up to mere inadvertence. (*See* Mem. Op. 7–10, June 4, 2008.)

In short, the proffered excuses are too little and too late. As I have previously explained, Calkins and Duchesse Farms had available to them for many months a variety of options for properly seeking relief from any unduly burdensome discovery requests (*see id.* at 11), and only now, after default judgment has been rendered against them, have they even attempted to make use of those options (*see* Countercl. Defs.' Mot. Protective Order, July 14, 2008). Moreover, they were given multiple warnings of the consequences of failing to comply with their discovery obligations and the Court's orders. They chose to ignore those warnings and are now suffering the consequences of that choice.

Calkins and Duchesse Farms present several other arguments for setting aside the default judgment. Most raise issues I previously considered and addressed in my June 4, 2008 Memorandum Opinion, and I need not repeat myself here. A few of their remaining arguments,

however, warrant a brief response. First, they argue that under *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494 (4th Cir. 1977), the relevant factors in rendering default judgment under Rule 37 cannot be properly evaluated "without the Counterclaim Defendants [*sic*] requested hearing . . . ." (Countercl. Defs.' Mem. Supp. Mot. Recons. 5.) Therefore, they "renew their request that a[n evidentiary] hearing be held." (*Id.* at 12.) However, despite their implicit claim to the contrary, there is no record that Calkins and Duchesse Farms ever sought a hearing on Pacel's Renewed Motion for Default Judgment, despite being entitled to do so under the terms of the Pretrial Order. (*See* Pretrial Order ¶ 5, May 16, 2007 (stating that "any party" may schedule a hearing on a motion).) Moreover, the Pretrial Order clearly states that "[i]f no hearing date is scheduled, the court may consider the motion to be submitted for decision without hearing." (*Id.*) Furthermore, Pacel explicitly notified both the Court and Calkins and Duchesse Farms that it believed no hearing was needed and that the motion was ripe for decision. (Countercl. Pl.'s Notice ¶ 2–3, Feb. 29, 2008.) Thus, Calkins and Duchesse Farms waived any entitlement to a hearing on Pacel's motion.

It appears, however, that Calkins and Duchesse Farms are arguing that the Court was required to hold an evidentiary hearing before rendering default judgment, regardless of any waiver. Although they are correct that an evidentiary hearing had been held in *Wilson*, I see nothing in that case that mandates such a hearing even when the non-complying party has failed to request one. Indeed, the hearing in *Wilson* had been a contempt hearing, not a default judgment hearing, and the Fourth Circuit reversed, in part, because there had been no notice to the defendant that the district court was even considering granting a default judgment at that time. *Wilson*, 561 F.2d at 502. In contrast, Calkins and Duchesse Farms had more than once been warned of the possibility, even the strong likelihood, of default judgment (*see, e.g.,* Order 2,
- 8 -

Dec. 21, 2007; Order 1, Oct. 26, 2007), and they even acknowledged that possibility in responding to Pacel's motion (*see generally* Countercl. Defs.' Obj., Mar. 4, 2008).

Equally misplaced is their reliance on Rule 55(b)(2), which states only that "[t]he court *may* conduct hearings" when necessary to enter or effectuate a judgment.[3] Fed. R. Civ. P. 55(b)(2) (emphasis added). Here, the nature and extent of their noncompliance was such that no evidentiary hearing was needed. Without objection, Pacel attached copies of the relevant discovery responses to its Renewed Motion. On their face, those discovery responses fail to comply with the December 21, 2007 Order and Rules 33 and 34. (*See* Mem. Op. 6–11, June 4, 2008.) Moreover, many of the inadequacies in those responses go to issues at the heart of Pacel's claims. (*See id.* at 13–14.)

Nevertheless, Calkins and Duchesse Farms argue that their deficient responses caused no prejudice to Pacel because David Calkins responded to similar discovery requests in full, and the three Counterclaim Defendants are a "closely-knit group." (Countercl. Defs.' Mot. Recons. 2.) Thus, they apparently would have Pacel simply accept their unsworn and untimely assertion that they can provide no additional or different information than that already provided by David Calkins. This Pacel need not do. Although there is little question that the Counterclaim Defendants are a "closely-knit group," this is not itself a sufficient basis to simply *assume* that none of them possesses any discoverable information not possessed by the others.

Furthermore, implicit in their argument is that "the discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i). If true, this likely would have

---

[3] Calkins and Duchesse Farms also rely on Rule 55 to argue that the default judgment should be set aside because "Rule 55 envisions a case of complete failure to prosecute the case." (Countercl. Defs.' Mem. Supp. Mot. Recons. 11.) However, Rule 55 was not the basis for the default judgment that was rendered against them. Rather, the default judgment was a sanction under Rule 37(b) resulting from their failure to comply with the December 21st Order to provide past-due discovery. Thus, the "failed to plead or otherwise defend" standard under Rule 55 is irrelevant. Fed. R. Civ. P. 55(a).

- 9 -

justified a protective order had the allegedly duplicative discovery been responded to with a timely objection. *Id.* Calkins and Duchesse Farms raise this objection for the first time, however, in the instant Motion to Reconsider Default Judgment, filed some nine months after the deadline for objecting to Pacel's discovery requests had expired. *See* Fed. R. Civ. P. 33(b)(2), (4) ("The responding party must serve its answers and any objections within 30 days after being served with the interrogatories. . . . Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); Fed. R. Civ. P. 34(b)(2)(A)–(B) ("The party to whom the request [for production] is directed must respond in writing within 30 days after beings served. . . . For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."). Even much later, during the almost four months in which Pacel's Renewed Motion was pending, Calkins and Duchesse Farms failed to argue that David Calkins' responses prevented prejudice to Pacel; indeed, only now have they even provided the Court with a copy of David Calkins' responses. Accordingly, they have long since waived any objection that the discovery requests Pacel served over nine months ago are unreasonably duplicative.

Finally, Calkins and Duchesse Farms argue that the sanction of $18,850 imposed pursuant to the December 21st Order "repairs any damage to Pacel and entering a default judgment against them is excess punishment beyond a reasonable level of equity." (Countercl. Defs.' Mem. Supp. Mot. Recons. 1–2.) However, the primary purpose of that sanction was not punitive; rather, it was an expense-shifting sanction awarded to Pacel for its reasonable expenses incurred in making its motion to compel discovery. Indeed, Rule 37(a)(5)(A) states that, with limited exceptions not present here, a court "must" award the party prevailing on a motion to

- 10 -

Case 3:07-cv-00025-NKM-BWC   Document 100   Filed 07/22/08   Page 10 of 12   Pageid#: 1689

compel its reasonable expenses, including attorney's fees.[4] Thus, the primary purpose of the sanction was to compensate Pacel rather than to punish Calkins and Duchesse Farms. Certainly, inasmuch as abuses of the discovery process are wholly avoidable, one would have hoped that the sanction would have a deterrent effect as well. In this sense, Calkins' and Duchesse Farms' failure to fully comply with the December 21st Order serves to underscore the fact that the $18,850 monetary sanction failed even to deter that misconduct, much less punish it. Accordingly, an additional sanction for that additional misconduct is wholly appropriate.

### III. CONCLUSION

The present circumstances of this litigation are well summarized in Pacel's brief:

> The only thing exceptional about this case is two parties' failures to participate in it. By disobeying court orders, disregarding any procedural rule that does not please them, and generally failing to meet the obligations of parties to federal court litigation, the Defaulting Parties have sought to stonewall, to increase the cost of already costly litigation, and to frustrate this Court's and Pacel's pursuit of a trial on the merits. The Defaulting Parties now seek to avoid the only logical result of their acts and failures to act. This matter should already have been tried and resolved, according to the schedule agreed upon by the Court and the parties. Instead, Pacel, its counsel, and this Court remain embroiled in motions practice and unnecessary pursuit of basic answers to customary discovery requests. This case is exceptional only because the Defaulting Parties have chosen to make it so.

(Countercl. Pl.'s Opp'n 10–11, June 25, 2008.)

Put simply, time has run out for Calkins and Duchesse Farms. Their Motion to Reconsider offers nothing that would outweigh or supersede the findings and conclusions set forth in my June 4, 2008 Memorandum Opinion, and I will therefore deny their motion in an accompanying Order.

It is so ORDERED.

---

[4] Likewise, a court granting default judgment pursuant to Rule 37(b)(2)(A)(vi) for failure to obey an order compelling discovery "must" also award the prevailing party its reasonable expenses caused by the failure, unless the failure was substantially justified or the award would otherwise be unjust. Fed. R. Civ. P. 37(b)(2)(C).

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this 22nd day of July, 2008.

*Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE