CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE, VA
FILED

MAR 13 2009

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DAVID E. CALKINS,  *Plaintiff,* | CIVIL NO. 3:07CV00025 |
| v. | **MEMORANDUM OPINION** |
| PACEL CORPORATION,  *Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court on the Motion for Summary Judgment by Counterclaim Defendants F. Kay Calkins and Duchesse Farms, LLC, as well as the Motion for Summary Judgment by Plaintiff David Calkins. For the reasons set forth below, David Calkins' Motion for Summary Judgment will be granted. Because all of Pacel's counterclaims against David and Kay Calkins and Duchesse Farms will be dismissed under Federal Rule of Civil Procedure 41(b) for Pacel's failure to prosecute, Kay Calkins' and Duchesse Farms' Motion for Summary Judgment will be denied as moot.

### I. BACKGROUND

In March 2007, David Calkins filed suit against Pacel Corporation ("Pacel") in Virginia state court. Calkins, who is a founder and former director, president, and CEO of Pacel, sued the corporation to enforce the terms of an employment contract that he claimed was breached by Pacel in December 2006. Pacel removed the case from state court to this Court in May 2007 and counterclaimed against Calkins and his wife, Kay Calkins, for various business torts, including self-dealing and the misappropriation of corporate funds. Pacel also counterclaimed against Duchesse Farms, LLC ("Duchesse"),

1

the alleged repository of the Calkins' ill-gotten gains from Pacel. Duchesse holds title to the Calkins' horse farm, and Kay Calkins is the sole managing member of the company.

Due mainly to the insufficiency of discovery responses from Kay Calkins and Duchesse, and partly to Pacel's non-participation in the litigation since August 2008, this case has stretched on for over two years. In July 2007, the parties first agreed to and filed a Joint Rule 26(f) Discovery Plan, by which they set a deadline of September 3, 2007 for making Rule 26(a)(1) initial disclosures and consented to the other discovery deadlines set by the Court. After Duchesse later filed a motion for summary judgment, Pacel made a motion under Rule 56(f) to be allowed to conduct discovery in order to respond more fully to Duchesse's motion and also informed the Court that all of the Counterclaim Defendants' initial disclosures were past due. On September 27, 2007, I granted Pacel's Rule 56(f) motion and ordered that "[a]ny disclosures by either party that are currently past due…shall be made forthwith."

After Kay Calkins and Duchesse failed to timely provide both their Rule 26(a) initial disclosures and their responses to Pacel's Rule 33 and Rule 34 discovery requests, Pacel filed a Rule 37 motion requesting that the Court compel them to provide the overdue discovery material immediately and pay Pacel attorney's fees and reasonable expenses incurred in bringing the motion. Pacel also argued that the Court should sanction Kay Calkins and Duchesse by rendering default judgments against them. On December 21, 2007, I denied Pacel's Rule 37 motion to the extent that it sought default judgment, but did so with leave to renew should Kay Calkins and Duchesse Farms fail to comply with their discovery obligations. I granted Pacel's request to compel discovery, ordering Kay Calkins and Duchesse "to provide Pacel Corporation with any and all past-

2

Case 3:07-cv-00025-NKM-BWC   Document 163   Filed 03/13/09   Page 2 of 11   Pageid#: 2075

due discovery materials, including Rule 26(a) disclosures, answers to Rule 33 interrogatories, and responses to Rule 34 requests, on or before January 11, 2008." I also granted Pacel's request for attorney's fees and reasonable expenses.

Because Calkins and Duchesse did not fully comply with their discovery obligations by the January 11, 2008 deadline, Pacel filed a renewed motion for default judgment on February 11, 2008. On June 4, 2008, I granted the motion, rendering default judgment against Kay Calkins and Duchesse only as to their liability, holding in abeyance the determination of damages and the entry of final judgment until David Calkins' liability had been determined. Kay Calkins and Duchesse offered a series of belated excuses for the discovery problems in a motion for reconsideration, which I denied on July 22, 2008.

Due to Pacel's failure to participate in the litigation since July 2008, David Calkins' liability on Pacel's counterclaims and the calculation of damages caused by all of the Counterclaim Defendants has never been determined. In June and July of 2008, Pacel's counsel sought to withdraw pursuant to Rule 1.16(b) of the Virginia Rules of Professional Conduct due to Pacel's repeated failures to live up to its financial obligations. On July 31, 2008, U.S. Magistrate Judge B. Waugh Crigler granted the motion, giving Pacel until August 15, 2008 to secure the entry of substitute counsel "or risk the consequences of its inability to proceed without counsel." Since Judge Crigler's order, Pacel has failed to secure substitute counsel, failed to respond to any of the

3

motions filed by David Calkins or the other Counterclaim Defendants, and has failed to keep the Court informed of its correct mailing address.[1]

On December 12, 2008, in the absence of any evidence to the contrary, I granted partial summary judgment in David Calkins' favor on the underlying breach of contract issue, holding that he was entitled to relief under the 2005 Termination Agreement with Pacel as a matter of law but reserving judgment on the issue of damages. David Calkins' motion now before the Court sets forth the extent of damages and seeks the entry of final judgment against Pacel under the terms of the 2005 Agreement.

Kay Calkins' and Duchesse's motion requests summary judgment in their favor on the issue of damages, a determination which I previously held in abeyance until David Calkins' liability on the counterclaims had been resolved. Although David Calkins' liability has not been resolved, Kay Calkins and Duchesse request the entry of an order stating that no monetary damages have been suffered by Pacel as a result of any of their alleged actions.

Pacel has not responded to either of the outstanding motions. On February 10, 2009, I issued a show cause order, which directed Pacel to show cause for its failure to participate in the litigation since July 2008 and warned that the Court would dismiss all of Pacel's counterclaims for lack of prosecution if no response was made by March 12, 2009.[2]

---

[1] In an abundance of caution, the notice for the hearing on these motions was sent to three different addresses that were available for Pacel. To date, two of the notices have already been returned as undeliverable. The notice sent to the address in Charlotte, NC has not yet been returned as undeliverable.

[2] The show cause order was sent to all three of Pacel's available addresses and has been returned as undeliverable from two of those addresses. The order sent to the address in Charlotte, NC has not yet been returned as undeliverable.

4

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 250. When considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., id.* at 248–50 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir.1999).

## III. DISCUSSION

### A. DAMAGES SUFFERED BY DAVID CALKINS

As explained above, on December 12, 2008, I granted partial summary judgment in David Calkins' favor, holding that the affidavits, reports, and contracts showed that there was no genuine dispute that the 2005 Termination Agreement was in effect when Calkins was fired by Pacel and that Calkins was entitled to relief under the terms of that

5

contract.[3] In compliance with my December 12, 2008 order and opinion, Calkins filed an affidavit setting forth the damages that he claims he is entitled to under the terms of the 2005 Termination Agreement. Specifically, Calkins claims he is entitled to: (1) three and a half more years pay at the rate of his former annual salary of $138,012.00, which totals $483,042.00; (2) $1.1 million in retirement funds; (3) $97,691.23 in unpaid attorneys' fees incurred in the defense of a criminal action against him by the Securities and Exchange Commission ("SEC"); and (4) $47,795.00 in attorneys' fees and costs incurred to enforce the 2005 Termination Agreement against Pacel.

The only evidence before the Court concerning these claims is the 2005 Termination Agreement and a sworn affidavit by David Calkins. Pacel's failure to participate in this litigation leaves me with no other choice but to grant summary judgment in Calkins' favor to the extent that his claims are consistent with the terms of the Termination Agreement. Concerning Calkins' retirement package, the Termination Agreement states that Pacel:

> shall continue payment for [Calkins'] $1.1 million retirement insurance program (Policy Number X9023107) including any and all employee tax payments (a "Gross-Up Payment"), and such other and similar deductions as the law now or may from time to time require. Should the Company fail to make payments on a regular monthly basis for more than 60 days then the Company shall be required to make a single payment to complete the retirement insurance package in its entirety.

Calkins' affidavit states that Pacel took back all of his retirement package in 2006 and failed to make any further payments. Because the Termination Agreement states that Pacel "shall be required to make a single payment to complete the retirement insurance package in its entirety" in the event of a default in payment and because there is no

---

[3] Specifically, I relied on the text of the 2004 and 2005 Agreements, the July 10, 2007 Affidavit of Gary Musselman, President and CEO of Pacel, and statements that were contained in an April 2006 SEC report.

6

genuine dispute that Pacel has failed to make payments as provided in the Termination Agreement, Calkins is entitled to the full $1.1 million of the retirement package.

Concerning Calkins' claim for indemnification, Section 5 of the Termination Agreement provides that Pacel "shall specifically indemnify and hold [Calkins] harmless from and against any and all liability and expense of any kind, including legal costs and attorney's fees, arising out of or in connection with" then-pending civil and criminal actions brought against Calkins by the SEC. Calkins states that the unpaid attorneys' fees arising out of the criminal charges brought by the SEC as a result of his position with Pacel amount to $97,691.23. Because there is no evidence in the record that indicates otherwise, Calkins is entitled to $97,691.23 in indemnification from Pacel.

With respect to attorneys' fees, Section 9 of the Termination Agreement states that "[t]he expenses and costs, including, without limitation, attorney's fees, incurred by the prevailing party with respect to any claim, suit or legal proceeding arising out of, under, or in connection with, this Agreement shall be paid by the non-prevailing party." In his affidavit, Calkins claims that the attorneys' fees and costs he incurred in enforcing the Termination Agreement amount to $47,795.00. Because partial summary judgment has already been entered against Pacel on the issue of liability under the contract and because there is no genuine dispute that Calkins' attorneys' fees and costs total the amount he claims, Calkins is entitled to the full amount of $47,795.00.

Calkins is not, however, entitled to any further salary as a matter of law. While the Termination Agreement states that Calkins is to receive an annual salary of $138,000.00, it does not provide for the continued payment of salary in the event of a termination. In his affidavit, Calkins states that he was paid salary by Pacel from July 1,

7

2005 to December 31, 2006 at an annual rate of $138,000 and claims that he is entitled to three and one-half more years salary at that rate. Although it is not apparent from Calkins' motion or affidavit, Calkins appears to be basing this claim on the terms of the 2004 Employment Agreement, which provided for severance packages that included full salary payments in the event that Calkins was terminated before 2014. The 2005 Termination Agreement, however, expressly vitiated the 2004 Employment Agreement. The severance provisions in the 2004 Employment Agreement therefore have no bearing on the interpretation of the 2005 Termination Agreement. Because the 2005 Termination Agreement does not provide for any severance or payments of salary in the event of a termination, there is no genuine dispute that Calkins is not entitled to any part of the $483,042.00 that he claims he is owed in back-salary.

In sum, I find that the affidavits and exhibits on file show that there is no genuine dispute of material fact that David Calkins is entitled to $1,245,486.23 in damages for the breach of the 2005 Termination Agreement. Judgment for that amount shall be entered in Calkins' favor in a separate order to follow.

### B. PACEL'S COUNTERCLAIMS

Pacel has several outstanding counterclaims against David and Kay Calkins and Duchesse but has done nothing to pursue those counterclaims since its counsel withdrew from representation last year. On February 10, 2009, I issued a show cause order warning Pacel that I would dismiss all of its counterclaims for failure to prosecute if it did not respond by March 12, 2009. Pacel never responded to the order.

A district court has the inherent power to dismiss *sua sponte* a case for lack of prosecution, even without affording notice of its intention to do so or providing an

8

adversarial hearing before acting. *Link v. Wabash R. Co.*, 370 U.S. 626, 631 (1962); *see also* Fed. R. Civ. P. 41(b). Such a dismissal functions as a final judgment on the merits. *Plaut v. Spendthrift Farm*, 514 U.S. 211, 228 (1995). In deciding whether to dismiss a case for the failure to prosecute, courts in the Fourth Circuit consider four factors: "(1) the plaintiff's degree of personal responsibility; (2) the amount of prejudice caused the defendant; (3) the presence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal." *Hillig v. Commissioner*, 916 F.2d 171, 174 (4th Cir. 1990).

Each of these factors weighs strongly in favor of dismissing Pacel's counterclaims against all of the Counterclaim Defendants. Regardless of its financial difficulties, Pacel is entirely responsible for its failure to prosecute its counterclaims. Former counsel for Pacel withdrew because of Pacel's extreme negligence in making its payments. And since July 31, 2008, Pacel has flouted the Court's orders by failing to make any efforts to secure counsel or otherwise keep the Court informed of its status and its mailing address. The Court has gone out of its way to give Pacel a chance to respond to the claims against it, but Pacel has continued to decline to participate in this litigation in any way.[4] Given these circumstances, one can only conclude that Pacel is either deliberately proceeding in a dilatory fashion or purposely ignoring the Court's orders and the claims of opposing counsel in hopes that it will somehow avoid liability. Since Pacel has not even bothered to inform the Court of its address or the status of its efforts to secure counsel, it remains to be seen how the Court could impose any sanctions short of dismissal. Furthermore, the Counterclaim Defendants would be prejudiced if the Court were to allow this case to drag

---

[4] As stated above, notices were sent to three separate addresses for Pacel and the Court issued a show cause order warning Pacel of its intent to dismiss Pacel's counterclaims.

9

on indefinitely, as the specter of civil liability would continue to hover over their heads. Because all four of the *Hillig* factors are satisfied, I will dismiss all of Pacel's counterclaims against David and Kay Calkins and Duchesse Farms in a separate order to follow.[5]

## C. LIS PENDENS

At the hearing on this matter, counsel for Kay Calkins and Duchesse Farms made a motion for the Court to quash the lis pendens on the Duchesse Farms property. Because all of Pacel's counterclaims have been dismissed, I will grant the motion to quash the lis pendens on Duchesse Farms in a separate order to follow.

## IV. CONCLUSION

Based on the evidence of damages set forth in Calkins' affidavit and the 2005 Termination Agreement, I find that there is no genuine dispute of material fact that David Calkins is entitled to $1,245,486.23 in damages for Pacel's breach of contract. I will therefore grant Calkins' Motion for Summary Judgment. Because I will dismiss all of Pacel's counterclaims against the Calkins and Duchesse Farms for Pacel's failure to prosecute, Kay Calkins' and Duchesse Farms' Motion for Summary Judgment will be denied as moot and their oral Motion to Quash Lis Pendens will be granted.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record and to Defendant.

Entered this 13th day of March, 2009.

---

[5] David and Kay Calkins and Duchesse have all requested that I grant summary judgment in their favor on Pacel's counterclaims. Because the counterclaims should be dismissed for Pacel's failure to prosecute, however, those motions will be denied as moot.

_/s/ Norman K. Moon_
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE